## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DERRICO NEWMAN,                          *

Plaintiff,                               *

v.                                       *          Civil Action No. JKB-23-1691

WARDEN WILLIAM BAILEY,                   *
DANIELLE BALLARD, RN,
ANGELA MATTHEWS, RN, and                 *
YESCARE CORP.[1]
                                         *
Defendants.

                                       ***

### MEMORANDUM OPINION

Plaintiff Derrico Newman filed this civil rights action, as amended, asserting that his health has been jeopardized due to Defendants' failure to provide him prescribed medication while he was incarcerated at the Eastern Correctional Institution ("ECI"). (ECF Nos. 1 and 5.) In response, Defendants filed Motions to Dismiss or, in the Alternative, for Summary Judgment. (ECF Nos. 24 and 28.) Newman was advised of his right to file an opposition response. (ECF Nos. 25 and 29.) He requested and received an extension of time to do so (ECF Nos. 30 and 31), but to date has failed to respond. The Court finds that the matter has been fully briefed and a hearing in this matter is unnecessary. *See* Local Rule 105.6. (D. Md. 2023). For the reasons explained below, the Motions will be granted.

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants as indicated in the case caption.

## I.    Background

### A.  Plaintiff's allegations

In his Amended Complaint, Newman names as Defendants Director of Nursing Danielle Ballard, RN; Assistant Director of Nursing Angela Matthews, RN; YesCare Corp. ("YesCare") ("Medical Defendants"); and Warden William Bailey. (ECF No. 5 at 1.) He alleges that between January 2019 and 2023, the named Defendants denied him prescribed mental health medications. (ECF No. 5 at 4; ECF No. 5-1 at 3.)  Attached to his original Complaint and Amended Complaint are a number of administrative remedies ("ARPs") and medication administration records ("MARs") demonstrating that on various occasions he was not provided prescribed medications. (ECF No. 1-1 (ARPs) and ECF No. 5-2 (MARs).)

In his Amended Complaint, Newman explains the basis for his claims against each named Defendant.  He states that YesCare is named as a Defendant because it is the medical provider for ECI and it is "responsible for the inactions of [their] employees." (ECF No. 5-1 at 2.)  Director of Nursing Ballard is "[r]esponsible for all nursing staff and handling all admin duties, having due knowledge of ARPs did fail to correct said situations." (*Id.*)  Assistant Director of Nursing Matthews is "[r]esponsible for assisting director of nursing with overseeing medical duties, having knowledge of ARPs did fail to correct the situation." (*Id.*)  Warden Bailey is "[r]esponsible for overseeing jail, answering ARPs, responsible for all staff and as the signer of [] part B of ARPS show did admit due knowledge and still did fail to rectify this medically dangerous situation." (*Id.*)

The documents attached to Newman's Complaint and Amended Complaint catalogue the alleged issues he had with receiving prescribed medications.  Specifically, on February 25, 2021, an unidentified representative from Centurion Nursing Staff responded to Newman's complaint

2

that he had not received unspecified psychiatric medications. (ECF No. 1-1 at 2.) That person advised that Newman had recently moved housing units, the pharmacy was contacted regarding the missing medication, those medications were now "back on the cart," and that he should have already received them. (*Id.*)

On April 19, 2022, Newman filed ARP ECI-0494-22 complaining that, when he received his medication that day, his Zoloft and Tegretol were missing. (ECF No. 1-1 at 25.) On May 19, 2022, the Warden's designee found the ARP meritorious in part, explaining that on April 19, 2022, Newman was out of his medication. (*Id.*) The medical department attempted to refill the medication, but a new prescription was required. (*Id.*) The new prescription was obtained the same day. (*Id.*) Newman was interviewed on May 12, 2022, and denied that there had been any other lapses or issues with his medications. (*Id.*)

On August 16, 2022, the Inmate Grievance Office ("IGO") dismissed Newman's grievance that on May 10, 2022, the medical department deliberately ran out of his blood thinning and psychiatric medication. (ECF No. 1-1 at 3 (IGO # 20220653).)

On October 19, 2022, Newman filed ARP ECI-1475-22 alleging that from October 7 through 10, 2022, he was not provided his prescription for Genadine, a medication he describes as prescribed to treat his anxiety. (ECF No. 1-1 at 4–5.) Newman reported suffering a panic attack on the evening of October 8, 2022 and the morning of October 9, 2022 because he had not received the medication. (*Id.*) He alleged that the "nurse techs" neglected to reorder the medication. (*Id.* at 5.)

Newman filed ARP ECI-0064-23 on January 12, 2023, complaining that on December 23, 2022, he did not receive Geodon. (*Id.* at 6, 8.) He alleges that, due to not receiving this medication, his anxiety was uncontrolled, and he was taken to lock up and suffered withdrawal. (*Id.* at 8.)

3

Ultimately, on February 17, 2023, Warden Bailey found the ARP meritorious in part because Newman did not receive his morning dose of Geodon on December 14, 17, 21 and 22, 2022 and did not receive his evening dose of Geodon on December 13, 21, 24 and 29, 2022. (*Id.* at 27.) Newman was interviewed during the investigation and advised that he had not had any issues receiving his medication since he was transferred to the west side of ECI. (*Id.*)

On January 27, 2023, Newman submitted ARP ECI-0110-23 alleging that on December 27, 2022, he had a medical and mental health emergency when he suffered an anxiety attack which resulted in his being placed on lock up and losing good conduct credits. (ECF No. 1-1 at 9.) He stated in the ARP that his conduct was not a behavioral issue but a mental health issue. (*Id.*) On February 6, 2023, Newman refiled the ARP as directed, stating that on December 26, 2022, he was sent to lock up instead of administrative segregation because he was having panic attacks due to not receiving his medication. (*Id.* at 13, 59.)

On March 6, 2023, Newman filed an appeal to the commissioner of ARP ECI-0064-23. (ECF No. 1-1 at 19.) Newman alleged that on May 19, 2022 the Warden found his ARP about not receiving his medication meritorious. But on January 27, 2023, he had to write another ARP concerning the same issue and again his ARP was found meritorious by Warden Bailey. Newman complained that the issue with his medication kept happening (*id.*), and his ARPs showed the gaps in his receiving his medication. He asked for the Commissioner to address the problem with medical so that the disruption in his receiving medications stopped. (*Id.* at 20.)

On March 22, 2023, Newman filed ARP ECI-0390-23 alleging that on March 19 and 20 his medication was not available at pill call. (*Id.* at 21.) He stated that his receipt of prescribed psychiatric medications had been off and on since 2021. (*Id.*) The Warden's response, dated April 21, 2023, indicated that Newman's complaint was meritorious: Newman had active medication

4

orders and review of the medication records showed he did not receive his medication on the dates he indicated. Staff was advised to ensure the medication refill process was monitored and Correct Rx Pharmacy was to be contacted regarding the refill process. (*Id.* at 21.)

Newman filed ARP ECI-0405-23 on March 27, 2023, complaining that from March 25 through 27, 2023 he did not receive his medication because it was not ordered on time. (*Id.* at 23.) Newman again reported suffering severe anxiety attacks due to running out of his medication. (*Id.*) On April 21, 2023, Warden Bailey again found Newman's ARP meritorious: Newman had an active prescription and did not receive his medication as prescribed. (*Id.*) Staff was directed to ensure the refill process is monitored and the pharmacy was to be contacted. (*Id.*)

### B. Defendants' Response

Defendants assert that Newman has failed to state a claim, and, in the alternative, they are each entitled to summary judgment. (ECF No. 28-1 and ECF No. 24-1.)

### 1. Warden Bailey

Through a sworn affidavit, Warden Bailey explains that inmates at ECI receive medical services through a private medical contractor and that he is not involved in providing medical care to inmates at ECI. (ECF No. 28-2, ¶ 2.) Bailey is not licensed to practice medicine and defers to medical staff regarding the care and treatment of inmates. (*Id.* ¶ 3.) When Bailey responds to an inmate's complaint regarding medical care, he relies "on the reports, assessments, and judgments of the medical contractor's trained medical staff to prepare any response." (*Id.* ¶ 5.) Specifically, as to Newman's complaints, Bailey avers that he relied on the medical and mental health care providers to provide appropriate care to Newman. (*Id.* ¶ 6.) Bailey specifically denies taking part in providing medical care to Newman or any decisions regarding the care provided to Newman. (*Id.*)

5

### 2.  Medical Defendants

Medical Defendants Ballard and Matthews each provided sworn declarations explaining their roles in Newman's care.  (ECF Nos. 24-2 and 24-6.)  Ballard explains that she is a registered nurse ("RN"), employed as the Regional Director of Nursing ("RDON") for ECI.  (ECF No. 24-6 ¶ 2.)  Matthews is also a registered nurse, and was previously employed as the Assistant Direct of Nursing at ECI.  (ECF No. 24-2 ¶ 2.)

As RDON, Ballard serves a "largely administrative" role.  (ECF No. 24-6 ¶ 5.)  She does not administer medications unless the facility is without a licensed practical nurse ("LPN"), which is rare.  (*Id.*)  Ballard occasionally works on the floor to provide nursing treatment if there is a shortage of registered nurses.  (*Id.*)  Additionally, Ballard investigates ARPs from inmates when the Assistant Director of Nursing ("ADON") is not available, which she describes as also rare. (*Id.*)

Ballard and Matthews explain that Centurion is responsible for mental health care at ECI and Centurion providers prescribe and renew psychiatric medications.  (ECF No. 24-6 ¶ 8; ECF No. 24-2 ¶ 5.)  Once ordered, nursing staff employed by YesCare administer the medication.  (ECF No. 24-2 ¶ 5.)  Neither Ballard, Matthews, or any licensed LPN or other RN can prescribe or renew medications.  (ECF No. 24-6 ¶ 8; ECF No. 24-2 ¶¶ 5, 6.)  They also cannot administer a medication where the prescription has expired.  (*Id.*)  If an inmate is prescribed a medication to be kept with them (Keep on Person, or, "KOP") then the patient keeps the medication in their cell, the medication is not distributed at sick call, and the patient is responsible for submitting a refill request.  (ECF No. 24-2 ¶ 5.)

Ballard recalls investigating Newman's ARP and interviewing him on at least one occasion.  (ECF No. 24-6 ¶ 5.)  Ballard found Newman's complaint meritorious because the MAR

was not initialed each day by the medication nurses, as required, to show Newman received his medication. (*Id.*)

Ballard also explains that there was a computer issue which resulted in the pharmacy failing to send medication to ECI. (ECF No. 24-6 ¶ 6.) Specifically, the pharmacy's system failed to show all of a patient's medications on their system; but when Ballard input the patient's name, all of the medications appeared on the system she used. (*Id.*) Ballard contacted the help desk, Director of Operations ("DO"), and Health Services Administrator ("HSA") as soon as she became aware of the discrepancies in the computer-generated medication lists, and the problem was resolved. (*Id.*)

Ballard further explains that nurses, typically LPNs, are supposed to check a patient's MAR and verify that all of the medications listed are on the pill cart when they are preparing to distribute medications. (ECF No. 24-6 ¶ 7.) If a medication is not on the cart, "the nurse is supposed to circle their initials and write on the back of the MAR that the medication is not there." (*Id.*) They are also supposed to check if the medication is in "overflow" and if so, they are to administer it. (*Id.*) If the medication is not present, the LPN is to call the pharmacy so the medication can be delivered that night. (*Id.*) If the prescription is expiring, the LPN is to contact the provider to see if the prescriptions should be renewed. (*Id.*)

Ballard offers that the LPNs did not always follow up when the medication was not on the pill cart (*id.*) but denies ignoring complaints about medication administration. (ECF No. 24-6 ¶ 9.) Anytime she learned of an issue with medication administration, she investigated by determining whether the medication was on the pill cart to be administered and if so, would make sure the LPN administered it. (*Id.*) She also counselled nurses on the medication administration process and documentation process. (*Id.*) If the medication was not on the pill cart, Ballard would

7

contact the pharmacy, in the presence of the inmate, and involve the LPN in contacting the pharmacy to further train the LPN on the process. (*Id.*)

Ballard spoke with Newman's family regarding his medication issues on October 10, 2022. (ECF No. 24-6 ¶ 10; ECF No. 24-3 at 3.) That morning, Newman had asked about his medication, Geodon, and his family called early that afternoon stating he did not get his medication. The pharmacy had already been contacted after Newman's morning inquiry and ensured the medication would be refilled and sent that evening. (*Id.*)

Ballard explains that she takes steps to ensure inmates receive their medications. (ECF No. 24-6 ¶ 11.) She has called the pharmacy to ensure medications are delivered in the evening. She has spoken with individual nurses to educate them about medication administration and the importance of documentation. She holds monthly nursing meetings where she and other leaders speak about policies, procedures, and address any issues with nursing staff. Ballard ensures that nurses are trained regarding medication administration procedures. Additionally, she advised the DO and HSA when she learned that the medical providers' medication list did not match the pharmacy list. She speaks to providers about the need to renew medications. She also randomly audits MARs on a monthly basis to ensure medication administration is properly documented and follows up with nurses if deficiencies are discovered. Lastly, Ballard explains that she coaches, counsels, and writes up nurses to ensure compliance with policies and procedures. (*Id.*)

Ballard confirms that on several occasions Newman did not receive his prescribed medications. (ECF No. 24-5 ¶ 12.) She reiterates that the failure to provide medication was due to the pharmacy not delivering the medication because of the now resolved computer issues; providers not timely renewing prescriptions; and/or medication nurses not following proper procedure when learning that a medication was missing from the pill cart. (*Id.*) Ballard avers that

each of these situations were beyond her control but when she became aware of the problem, she endeavored to timely address each issue.  (*Id.*)

Matthews explains that as ADON, she was responsible for ensuring nursing staff perform their job duties.  (ECF No. 24-2 ¶ 6.)  Matthews would not know of an issue where an inmate did not receive their medication unless she was specifically told or received an ARP, and she does not recall receiving any ARPs from Newman.  (*Id.*)  Matthews further explains that if she received an ARP, she would have conducted an interview of the patient and investigated the concern.  (*Id.*)  If the inmate had an active prescription but the medication was not at the facility she would call the pharmacy to see if the medication could be delivered that day.  Where the prescription had run out or expired, she would email Centurion to request renewal of the medication.  (*Id.*)  Matthews avers that it was her standard practice to facilitate delivery of medications.  (*Id.*)

Matthews does recall calling the pharmacy on November 2, 2022, in Newman's presence, to request renewal and or delivery of Geodon.  (ECF No. 24-2 ¶ 7; ECF No. 24-3 at 2.)  Matthews noted that Geodon was reordered and sent on October 10, 2022 and reordered November 2.  (*Id.*)  Newman also asked for A&D ointment and coal tar shampoo but if Newman had prescriptions for those items, they were KOP and Newman was responsible for resubmitting refill requests.  (*Id.*)

Matthews denies knowledge of any occasion where Newman's prescriptions were current and the medications were present in the facility but they were not administered to him.  (ECF No. 24-2 ¶ 8.)  Matthews further explains that at times Newman's mental health providers failed to timely renew his prescriptions and at other times the pharmacy failed to deliver the medications to the facility.  (*Id.*)  Matthews avers that when made aware of a medication issue, she never ignored the problem.  (*Id.*)

9

## II.    Standard of Review

Defendants' dispositive motions are styled as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56.  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, in deciding a Rule 12(b)(6) motion, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462 (4th Cir. 2012).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery.  *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721

F.3d 264, 281 (4th Cir. 2013).  When the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).  Newman was provided such notice.  He also received notification from the Clerk of Defendants' dispositive motions and had the opportunity to reply with exhibits and declarations but has not done so.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. *See Shaw*, 59 F.4th 121; *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

11

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244 (citations and quotations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit.  *Harrods Ltd.*, 302 F.3d at 244 (internal citations omitted).  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 F. App'x at 638.

The Court concludes that resolution under Rule 56 is appropriate.  Newman has not requested discovery under Rule 56, nor has he filed an Affidavit in compliance with Rule 56(d).  Indeed, he has not responded at all, let alone to advise the Court that resolution pursuant to Rule 56 is inappropriate.  Thus, conversion of Defendants' motions to ones for summary judgment is appropriate and this Court will consider the exhibits filed.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III.    Analysis

### A. Eleventh Amendment

Defendant Bailey asserts that he is immune from the claims against him in his official capacity based on the Eleventh Amendment to the Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is . . . a suit against

14

the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court. Warden Bailey is a state official or employee. Accordingly, Eleventh Amendment immunity applies to the official capacity claims for monetary damages, and those claims will be dismissed.

### B. Personal Participation and Eighth Amendment

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link

15

between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Additionally, local governments and private entities may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violate the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978); *West v. Atkins*, 487 U.S. 42, 49 (1988); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003). In order to establish a *Monell* claim, a plaintiff must demonstrate that: (1) the municipality or private entity had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City, N. Carolina*, 388 F.3d 440, 451 (4th Cir. 2004).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" and prohibits "unnecessary and wanton infliction of pain" against inmates. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). To state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

A review of Newman's allegations and the record evidence establishes that Newman has not provided a sufficient basis to support his deliberate indifference claim against the named Defendants. Assuming that Newman has an objectively serious medical need, the evidence does not support a finding that any of the named Defendants were subjectively deliberately indifferent to those needs.

17

### 1. Warden Bailey

Newman's claims against Warden Bailey in his individual capacity fail. As discussed, above, it is firmly established that the doctrine of respondeat superior does not apply to § 1983 claims, so Newman must establish that Bailey participated in the allegedly deficient medical care or had supervisory liability for that care. *See Wilcox*, 877 F.3d at 170; *Shaw*, 13 F.3d at 799. There are no allegations that Warden Bailey personally participated in the decisions relating to Newman's medical care. As for supervisory liability, in the Maryland prison system, inmate medical care is provided by privately contracted medical care providers. As Warden Bailey has stated in his declaration, he does not oversee decisions made by the medical providers and has no training or authority to administer or direct medical care. Thus, Warden Bailey lacked supervisory authority over the medical care and cannot be held liable pursuant to supervisory liability.

Newman notes that Warden Bailey reviewed his ARPs regarding the failure to provide his prescribed medication, but those actions do not provide a basis for § 1983 liability. While the Warden found several of Newman's ARPs meritorious, those ARPs and their resolution reflect that while the Warden was aware of some interruption in Newman receiving prescribed medication, they also show that the Warden was advised that the medication had already been reinstituted and that the appropriate staff had been counselled about policies and procedures for insuring proper distribution of Newman's medication. On this record, the Court does not find a basis to conclude that Warden Bailey acted with deliberate indifference to serious medical needs based on his actions in relation to the ARPs. The Court therefore need not address Warden Bailey's additional arguments in support of his Motion and will grant the Motion.

### 2. Medical Defendants

Newman asserts in his Amended Complain that he seeks to hold YesCare liable for the actions of their employees. But as noted, respondeat superior is not cognizable under § 1983. Nor has Newman alleged that YesCare had an unconstitutional policy or custom that resulted in the failure to provide him the prescribed medication. As such, YesCare is entitled to dismissal.

Newman seeks to hold Ballard and Matthews liable for the disruption in his medication because of their positions as supervisors and because they knew about ARPs he filed and failed to correct the situation. But for the reasons that follow, Ballard and Matthews are each entitled to summary judgment.

The evidence before the Court shows that Ballard investigated at least one of Newman's ARPs complaining about not receiving his medication. Ballard interviewed Newman, reviewed his medical records, and found the ARP meritorious because the medication nurse failed to initial each day showing whether he received the medication.

Assuming that this investigation sufficiently demonstrates that Ballard had knowledge that the medication nurses' conduct posed a risk of injury to Newman, the record evidence also demonstrates that Ballard's response to this knowledge was not so inadequate as to show deliberate indifference or tacit authorization of the nurse's conduct. To the contrary, the record shows that when Ballard learned of the conduct she acted to remedy the medication administration issues. She did not ignore Newman's complaint, but instead investigated anytime she learned of an issue with medication administration. Specifically, she investigated whether the medication was on the pill cart to be administered and if so, would direct the medication nurse to administer it and/or counsel them regarding the process for distributing medication and how to document the administration of medication. On occasions where the medication was not on the pill cart, Ballard

called the pharmacy to make sure the medication was sent and involved the nurse in the process to continue training the nurses. Additionally, Ballard spoke with nurses individually and in staff meetings regarding the importance of documenting medication management and regarding policies and procedures. Further, when she learned of the computer issue regarding the pharmacy computer system and discrepancy in medication lists, she escalated the issue to the DO and HSA. Lastly, she spoke with providers regarding the need to timely renew prescriptions and performed random audits of MARs, following up with nurses where appropriate.

On this record, the Court cannot say that Ballard's response to the interruptions in Newman's receiving his prescriptions was "so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." *See Shaw*, 13 F. 3d at 799. Rather, the record demonstrates the Ballard responded reasonably to the medication issues and she is entitled to summary judgment.

Likewise, Matthews is entitled to summary judgment. The record demonstrates that Matthews was not aware of a recurrent issue with Newman not receiving medication. Matthews met with Newman once regarding his not receiving Geodon. Matthews avers that, to her knowledge, Newman did not receive his medication on one occasion because his mental health provider failed to renew the prescription and, on another occasion, because the pharmacy did not send the medicine: both instances were beyond her control and did not involve providers who were subordinate to her. As such, there is no evidence that Matthews had actual or constructive knowledge that her subordinates were engaged in conduct that posed a pervasive and unreasonable risk of injury to Newman.

Moreover, the record evidence does not establish that Matthews' response to the knowledge regarding Newman's medication was so inadequate as to demonstrate deliberate

indifferent or tacit authorization. As noted, Matthews met with Newman on one occasion when he did not receive Geodon and she called the pharmacy, in his presence, to have the prescription renewed or delivered. In short, Matthews responded reasonably when made aware of the failure to provide Newman his prescribed medication. She is entitled to summary judgment.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motions are granted. A separate Order follows.

Dated this ___5___ day of September, 2024.

FOR THE COURT:

James K. Bredar
United States District Judge

21